We will now hear oral argument in our first case, Spivey v. Norris. Mr. James. May it please the court, I'm Randolph James of the North Carolina Forsyth County Bar, and I have a apparently seasonal allergy cold. My voice is not normally this low. Well then if you wouldn't mind, and for my benefit particularly, speaking more directly into the mic. Yes ma'am. Thank you. I have reserved seven minutes of rebuttal. That's correct. Daniel Spivey, 28 years old, a nurse for Grand Strand Hospital, was arrested in 2012 and was charged with forging a prescription that her dentist, Dr. Lawson, had written. Throughout this investigation and the charges, at no time did the defendant's, Detective Norris, or his non-defendant, Mr. Cherry, show Dr. Lawson's prescription that was in question. The Detective Norris is the individual who orchestrated, we say, this particular charge and was later dismissed. Who obtained the probable, who obtained the arrest warrant? The arrest warrant was obtained by SBI Agent Cherry, but SBI Agent Cherry relied upon, in his deposition, he states he relied upon, and in the SBI report, relied upon solely his longtime friend, Detective Norris. When I showed Detective, or SBI Agent Cherry, in his deposition... Now what, tell me again where this, where he relies solely on Mr. Norris. Do you have a citation to the record for that? Yes, sir. So, in the timeline, and specifically, when Agent Cherry initially became involved, which was after, it was November 7, 2012. And if you'll look at the sealed exhibit on page 972 and page 1007, the SBI file does not describe a November 6 interview of the dentist, Lawson, that was conducted by Norris. So, I mean, is there an affidavit or some similar statement from Detective Cherry that says he relied on Detective Norris in order to obtain the order from the magistrate? No, sir. It's better than that. It's a sworn testimony in his deposition. It's also inferred... And that's at page 972. 972 is the SBI file. It's the sealed exhibit. And it's sealed exhibit 1007. Alright, but you say he also testified to that. Where's that? His deposition testimony... Now, one reason I ask that is that we've all seen a number of these malicious prosecution, false arrest type cases over time, but I think this is the first one I've ever seen where the affiant for the warrant, the person who appeared under oath before the magistrate, is not a defendant. That's correct. So, what happened here is that Norris had this long-time family relationship with my client, Daniel Spivey, and her family. And for whatever reason, it's unexplained in the record, I can't explain it other than it's human behavior, he becomes obsessed with it. Obsessed to the point that he interferes with the marriage between her and Jonathan Spivey. Explain the success, you said obsessed, and that's kind of not clear in terms of the facts of what you mean by being obsessed. It seems that he's interested in her leaving what he describes as a drunk husband, but there seems to be no other reason for why he is engaged in that kind of conduct with her. In the record proper, and I think even Judge Boyle acknowledges in discussing the malicious prosecution aspect or abusive process aspect, acknowledges that the record is replete with references to Norris's inappropriate interest. My hyperbole was obsessed, but inappropriate interest, phone calling her, he's a married man, she's married. He's calling her not just to ask about or express concern about her husband, but calling her, my client was 28 years old. Let me cut to what I'm asking, is there any indication there's a sexual interest on the part of the detective with her? You said she's married, he's married, he's making calls, they're inappropriate, but I thought she testified there was no such type of interest expressed to her. She did testify that there was never a specific reference to him having an intimate encounter with her, but she was uncomfortable. And her discomfort was palatable, and she expressed it to him, to her family, but it didn't cease. When she refused to follow his direction, his directive to leave her husband, he charged, or he caused her husband to be charged with a DWI. Well, he stopped, the husband was stopped because of a pattern of erratic behavior and the matter was turned over to other officers, as I recall. But could I just go back for just one moment to follow up on Judge Agee's question? Judge Cherry is the person who swore out the warrant, correct? Agent Cherry, along with Norris. Norris and Cherry were both present. The complainant on the warrant form is Cherry, the SBI agent, it's not Norris. Correct, and so Judge Agee is correct. It is unusual to see a claim, an allegation against the officer who did not swear out the arrest warrant, that Norris is actually named as the defendant. And I did want you to just quickly ease my mind about whether there's a possible standing problem. Certainly. Two issues. One, Norris told Cherry, and I apologize for using the last name, just shortcut it. But Norris tells Cherry, I have a conflict, I'm not in the family. But he doesn't just refer the case and stand back. He is with Cherry every single step and, most importantly, before Cherry ever becomes involved, Norris, before there's a superior court order permitting access to the record, visits Dr. Lawson. Cherry did not know that Norris had gone to visit and it was Dr. Lawson's sworn testimony that he had two visits. Is that pertinent in some way? We know that Cherry reviewed Spivey's pharmacy records, correct? Cherry testified he reviewed. Do you dispute that? Well, I simply say that when I showed him the prescription at question, because the case turns on whether Dr. Lawson wrote a three or a two. My question, though, is actually fairly straightforward. Yes, ma'am. Do you dispute the fact that Cherry reviewed Spivey's pharmacy records? I dispute the credibility of Cherry's statement. I dispute Cherry's statement because I showed him the prescription. But I'm not talking, we're talking about different things. My question was a little more focused than that. You either dispute it, you either dispute it as a question of fact or you don't. And I'm trying to understand, are you just challenging, are you disputing everything Cherry says? Is that what you're telling me? Just about. Because Cherry could not acknowledge it. Cherry testified and put in his SBI report that the reason Norris was interested in Miss Spivey was related to her, him having, Norris having received a confidential informant. But Cherry says that someone from South Carolina, a DHEC officer, made Officer Norris aware. Officer Norris says no, it was a confidential informant. Well, even if all this is true, I thought that Officer Cherry was directed by the Assistant District Attorney to obtain the warrant. Is that accurate? Yes, sir. So, again, the focus is on... No, there's evidence in the record that that happened. Are you saying that's false? No, sir. I'm saying that Nance and Cherry went to see the Assistant District Attorney Nance. And when Cherry and Norris went to see Assistant District Attorney Nance, they didn't say, we've not shown the prescription to Dr. Lawson. They had talked to the dentist, correct? I'm sorry, I didn't hear that. And they talked to the dentist and they had seen the copy of his records? No, sir. What they saw was in his records, his notes, Dr. Lawson's notes, said 20 percocet. The prescription was written for 30 percocet. Dr. Lawson testified that if these agents... Right, I understand that that's what he said later on, but why wouldn't that have been probable cause under the circumstances? At the time. Yes, ma'am. But the probable cause at the time is, one, if you are trying to establish probable cause, you want to be able to show to... At the time, Lawson said he never wrote the prescription for 30 tablets. At the time. Well, that's what Cherry says, but Lawson denies it. No, he didn't deny it until after. And after the probable cause determination, I believe he said he must have been mistaken. Dr. Lawson's story changed over time. And I think that still goes back to Judge Agee's question about what was presented when the warrant was sought. So, Dr. Lawson testified he was never told that these officers were investigating Dr. Lawson's patient, Daniel Spivey, to see if this was a fraudulently written prescription. He realized that that's not quite responsive. I'm trying to answer your question. So, at the time, the only evidence we have is the SBI report that Cherry reports that Lawson said. Cherry stated in his deposition that Lawson never told him that Lawson had made a mistake in writing the prescription. And the investigation notes reflect his account of the meeting. And Lawson said he never wrote prescriptions for 30 tablets. He usually writes Percocet prescriptions for 20 tablets or less. But the prescription was written for 30. Had you simply shown Dr. Lawson the prescription and he would have said, that's a three, I wrote it. That's fine in hindsight, but we're talking about probable cause at that time. And it seems like to me the focus has to be at the time the district attorney told Detective Cherry to obtain the warrant, you have to show that there was a scheme afoot to mislead or manipulate the district attorney in order to get him to direct Cherry. Because once Cherry acts at the direction of the prosecutor, I don't think you have a case otherwise. The difference is that once Nance was shown the prescription, he immediately dismissed the case. He dismissed the case against Ms. Spivey. Ms. Spivey had originally offered an offered plea to save her nursing license. And then there was a subpoena issued for the prescription from the pharmacist. And I'm out of time. Yes, sir. Tell me about that offered plea. You said she was originally offered an offered plea. I thought in doing so she actually was sentenced to probation. And she served that. Judge, excuse me. Yes, please. But as you know, under North Carolina law, 1996 is a deferred prosecution statute. And so she, as part of the deferred prosecution, she made the offered plea. The Sixth Circuit has said an offered plea is not an admission of guilt. But it is an indication that you believe the evidence is sufficient by which one can be convicted even if you maintain your innocence. The technicality is that, yes, you do for the 1996 admit there's some evidence, but it's not a sufficient evidence. There's some evidence. You wouldn't take an offered plea if you felt like there was a chance you would not be convicted because that evidence is insufficient. It has to be colorfully at least sufficient evidence on which you can be convicted from a lawyer's perspective advising the client to take the plea. So it wasn't my client. It was a different attorney. I got that. I wasn't talking about you. But let me ask this because this ties in with this whole business of didn't show the prescription. Why wouldn't that not be a consideration before you would enter an offered plea? Why would you not want to know in obtaining this warrant and testimony from Dr. Lawson, did you show him this prescription? If the main if she's maintaining, that's what he wrote. Why would that be in it? Well, she maintained that she never altered the prescription. She took the prescription to the pharmacist. The pharmacist filled it. She never contended that she altered it. You understand my question? Absolutely. Why didn't why didn't Attorney Worley? But listen to me. It seems to flow that she says, I didn't change this prescription. Basically, she said, this is what the doctor wrote. She has now statement. The doctor says, I didn't do it. Why wouldn't it flow? Did you show that prescription to the doctor? Or did he say that's not his prescription before you went in and offered? Yeah, I would. It wasn't in court then. I don't know about the circumstances between the two parties. I agree with you. I would have issued a subpoena prior in connection with that court appearance and asking for the document. Thank you. Yes, of course. One of the elements that you have to prove is that the prosecution terminated in your client's favor. What is your evidence of that? The evidence is that the District Attorney, Assistant District Attorney Nance, the 1996 plea was for a one-year action probation, two years total. It was dismissed after 35 days once the subpoenaed prescription was shown to Nance. It's clear, it's on page 11 of our reply brief, that the document prescription was not modified or altered. Three is three. The only evidence in the record, though, is an order that says, pursuant to the North Carolina statute, that the case is dismissed. What's your evidence that there was anything else afoot there? How does that terminate in her favor? I mean, she still has the dismissal. I mean, she did get her record expunged, but how does that show innocence? If you look at 1996, it's a mandatory one year. It was terminated after 35 days, and it's undisputed that the subpoenaed prescription was presented to Now, the form, the NCAOC form, showed that it was pursuant to 1996. Does that mean that she was not somehow guilty or it wasn't dismissed? The facts are that the prescription once shown indicated that it was dismissed and that was binding. It was dismissed with prejudice. Thank you. Yes, thank you. Thank you. Mr. Wood? Yes, ma'am. Let me start with the same question I just asked counsel. Did they establish the necessary element that the prosecution terminated in the plaintiff's favor? No, Your Honor, I don't think that they did. I would first like to – there's no evidence that the subpoena was presented to anybody other than the plaintiff's testimony that that's what she was told. Apparently, according to the plaintiff, the subpoena was presented by her attorney to the assistant district attorney and to the judge. Which subpoena are we talking about now? I guess – I'm sorry, Your Honor. The subpoena for this original prescription. So, the original prescription. There's no evidence of that. There's no evidence from the assistant district attorney to support what the plaintiff says, nor is there anything from her attorney. So, as Judge Agee – as you pointed out, the file stamped court documents indicate that the offense or the conviction against her was dismissed per compliance with 9096 conditions. And there's no evidence to dispute that. And I think the law is pretty clear and we've talked about that some in our brief, but I wish in retrospect I'd added more law about that. But Supreme Court cases going back to 1923 that basically say the court records cannot be impeached collaterally. And if they're untrue, it has to be corrected by that particular court. So, I understand that, of course, the Fourth Circuit sits much higher than the Columbus County Criminal Courts. But if a correction to that record is to be made, that's where it should be, whether it was by way of an appeal, which apparently never happened, or by a motion for appropriate relief. So, Your Honor, I think the evidence as it stands is that it was resolved per her compliance with 9096 conditions, and that was pursuant to her plea bargain. And under North Carolina law, a plea bargain or some other compromise initiated by the defendant, the criminal defendant, cannot lie or cannot be sufficient to allow a claim for malicious prosecution. So, I hope that answered your question, sir. I had a question about the ongoing relationship of Norris with this case. He recognized a conflict and turned the matter over to Cherry, but he didn't disassociate himself with the investigation after that. Would that not have been the appropriate thing to do under the circumstances? I think, Your Honor, reasonable minds could differ as to whether that would have been prudent. I don't think there was any legal requirement for him to do that. I think he recognized that he may have some personal feelings one way or the other about the plaintiff in this case. He did turn it over to SBI Agent Cherry. I think the evidence from Agent Cherry, and there's nothing from the plaintiff to dispute it, that he spearheaded the investigation from that point forward. However, he's from another part of the state. He's a one-man operation, and Detective Norris is a resident of Columbus County and knows people in Columbus County. And he testified, and I think it's fairly clear that he was assisting Agent Cherry in locating people, taking him to them, and at least being another set of ears in the interviews. Well, here we have a warrant. Yes, ma'am. We have a magistrate judge determination that there was probable cause. And we have an affiant who is not the defendant. There seems to be a lot of space between the consequence and Norris. And that was part of what went into my question I don't think I ever got a response to about standing. Have you seen cases like this before? I found this one to be quite unique. Your Honor, I'm in the same situation as you. I have not uncovered in the course of this case or any other ones that I've been involved in whereby somebody who went before the magistrate and provided the sworn testimony to obtain the warrant was not named as a defendant. So I certainly agree that if there was someone to be sued, and it's our position that probable cause was well established, but if for some reason there's someone to be sued, Detective Norris is not the proper defendant. It should have been SBI Agent Cherry. Well, if not, I'm sorry. No, let's just say you haven't raised a specific objection to standing in this case. No, sir, we have not. Maybe we should have, but we did not. Instead, essentially, all of the information that went before the magistrate, and as two of you from North Carolina understand it, there's no requirement to submit a written affidavit. It's a particular statute that authorizes oral testimony, and in my experience, it's essentially what happens. She's not seeking to set aside a plea or conviction because the evidence wasn't presented. She's seeking to establish what has been preserved, that is, to challenge the probable cause for the rest that was made. And in doing so, as I understand it, she's saying you didn't show that doctor that prescription. You went and asked a bunch of general questions. What do you do? What is your general practice? I generally give the record says 20 pills. I only do 20 pills for the most part, but they never showed that prescription. And that's the problem, from what I see here, that goes to here, is why it affects her. Maybe standing is an issue, but from probable cause perspective, she's the one who's sitting, who has to deal with the so-called probation. So the question is, why wouldn't, I mean, it just seems to follow. If the basis of the conviction is that you are in possession of illegal drugs by virtue of a prescription that a doctor wrote, and you go in and talk to the doctor, and you got that prescription right in your hand, why would you go in and just ask questions, do you do 20 pills? What does the record here show? And never show the doctor the prescription that says, did you write this prescription? That seems to be fundamental. The question, because all he's saying is his practice, but the specific evidence is right there. Once he says, I didn't write that prescription, game's over. But why wouldn't you show that prescription? Well, I would first point out, Your Honor, I mean, we are at a summary judgment stage, and so the evidence must be taken in the light most favorable to the plaintiff. Give it to me in the light most favorable that shows when you go in and ask a dentist as to whether information about a prescription you got in your hand, in the light most favorable, why would you not ask that question, did you write this prescription? And show it to him. There's solid, I mean, if what the plaintiff says is true, that would have been a good question to ask. What is the basis for her being prosecuted? Isn't it because she had a prescription that supposedly said 30, when in fact it was supposed to be written for 20? So she had, I guess, 10 or so extra pills, and she's convicted of at least getting off a plea for possession. Is that the basis? No, Your Honor, respectfully. Again, we are, Norris as well as Cherry contend that they showed the dentist the prescription. He denies that, so of course we have to take his side of the story at this stage. But even leaving that aside, there was ample probable cause. She, they went and they spoke to the dentist, and his records, I don't believe it's disputed, he had logged 20 pills were prescribed on that particular day, August 17th, 2012. Well, there's no question what he said was supported. The question is, if you have the actual prescription in your hand, why would you stop at the point that you say, if he says, oh, I only do 20, this says 20, you wouldn't validate and says, okay, here's a prescription. Did you do this prescription? I mean, it's almost intentional. You would not, if you got everything you need, why take, it's like being a, it's like cross-examination, isn't it? You get up and you wouldn't ask that question if you didn't know the answer, and they didn't know the answer as to whether he had actually written that prescription because they didn't ask it. So they didn't ask that question. For sake of the argument today, they didn't ask that question. But my point here is, Your Honor. Why? Well, it might have been that he said he never wrote prescriptions for 30, and they took it. Tell me what is your answer. I understand Judge Duncan's got a good answer, but give me your answer. Here's what I'm trying to get at. Of course, my clients say we showed it to him, and he said, it looks like it's 30. He didn't say it was a mistake, and I recorded it for 20. But of course, he said, the dentist in his deposition said that that did not happen. So I have to take that part. But there's ample probable cause if you leave that aside, Your Honor. She got 30 pills, 30 pills of Percocet, and the dentist's record stated that he only prescribed 20. The dentist also said, I would not chart 20 and write a prescription for 30. So you have those two facts. If that prescription he had written actually had 30 of them. I'm sorry? If that prescription actually that he wrote one for 30, it wouldn't be illegal. Right, but I think they are fair in assuming that they're even taking out the question that you're talking about. She got 30 pills. His records say that he charted for 20. He says, I would not chart or prescribe for 20 for 30. Excuse me. Let me get this straight. He would not write a prescription for 30 and then say in his log, I only charted for 20. So I think they're able to make that assumption that there's a problem between what he prescribed and what happened at the pharmacy. I haven't reported well, but I mean, I'm sure this dentist probably writes probably tens, maybe hundreds of prescriptions. And he certainly is testifying to the best of his knowledge. You haven't shown him anything. And you've got this prescription, not you to investigate, of course, has this prescription. And it stops short of showing the prescription of saying, did you write this prescription? Which seems to me, I don't know why you wouldn't ask that question. Now, whether it goes to the sufficient of the proper cause, because you do have other evidence. And that's what you're pointing to. That's what I'm. Well, tell us about the other. Okay, well, I guess what I'm. And I understand. First, did the officers testify that they read the prescription to be 30? The officers testified, Your Honor, they looked at the prescription. It appeared to them that it had been altered. They went to the pharmacy and looked at the original. But they, a tail had been added to the two to turn it into a 30. Yes, Your Honor. And so to get back to your question, I think you just kind of got to the point I was hoping to be able to make. Is that there's ample probable cause other than, even if you don't ask that question. And if that's really what the plaintiff's saying is that, hey, an inadequate investigation was done. Well, there's plenty of law from this circuit that indicates that that's not. If probable cause otherwise exists, that the complaint that you didn't conduct a thorough enough investigation isn't going to, I guess, dispel the probable cause. Could I ask one thing? Yes, ma'am. From Spivey's chart notes, what did they say? The chart notes indicated, as I understand it, that she was prescribed 20 Percocet pills. That was what I understood. And Sherry reviewed Spivey's chart notes. That's correct, Your Honor. So I would just point out Watkins versus Arnold and a statement from that. I'm almost out of time. I'm leaving some time for Mr. Blanchard. Let me ask you this question. Yes, sir. If the evidence, if you didn't have the original prescription that had the 30 and the 20, would there be sufficient evidence upon which she could be convicted in this case? Well, as to being convicted? Yes. I don't know that, but I don't think that's the same question as whether or not there was probable cause. That's my question. I want to know the sufficiency of the evidence. In other words, the conviction upon which she has in and of plea. Can you establish it simply by going to the doctor and saying, 20 is what's in the record. He says I only do 20. Is that sufficient? I don't know what a jury would say with respect to getting it beyond a reasonable doubt. But, again, we're not to dodge your question, Your Honor, but we're talking about a probable cause analysis, which is far less. And I think there's plenty of probable cause. And we're not even talking about the issues about her admitting that, hey, my husband has an issue and he's stealing pills from me and I have to hide them from him. That's just another layer. And if you look at the recent case, I think it's going to be. It sort of makes this more colorful. And you're right in the normal case. But when you tack in this relationship aspect that this particular officer, not the one in the cheek, the other one, is out to get her. He's harassing her. In her words or her belief, he's inappropriately calling her. And if you take it in that vein, you wouldn't ask that next question, is this the prescription? Would you? I mean, that's her, you know, and if it was a regular officer who had no interest, maybe they are investigating. This is just the way they're doing it. But would you ask that additional question in conjunction with the relationship issues that are here? I don't know. I mean, I really don't know the answer to that question. You could have. But the fact that, or at least we have to accept the fact that it wasn't asked, doesn't resolve the probable cause establishment. Okay. And I have reserved some time for Mr. Blanchard to discuss the communities issues. Thank you. May I please record I'm Norwood Blanchard from the New Hanover County North Carolina Bar. I'm here representing Detective Norris individually. I was going to talk about immunities, but I really want to step in and plug some of the evidence issues that you had asked about. And Judge Agee, the first one you had asked, Mr. James, where the testimony, what was the testimony about Norris, Cherry solely relying upon Norris? And that was a good question because that's the exact opposite of what Cherry actually testified. You can cite for us. Yes, I can. I can, Your Honor. It's Joint Appendix 633, lines 10 to 12. Also, and I believe, Your Honor, this was your question as well. You asked about the inappropriate relationship, and Judge Winn, you just brought that up again, the allegations about inappropriate relationship. The plaintiff's testimony, and I apologize, I don't know the Joint Appendix citations for it, but I can tell you where it is in her deposition. She testified that Norris never touched her inappropriately or threatened her in any fashion. And that's at page 130, line 16 to page 131, line 9 of her deposition. She also testified that she never told Norris at any point that he was making her uncomfortable. And that's page 27 of her deposition, lines 14 to 17. Does that really help you all that much? The fact that he never touched her inappropriately, and she never communicated her discomfort with his contact, I'm not sure advances the discussion any with respect to whether or not she felt intimidated or harassed by him. Judge Duncan, you're correct about that. And the odd thing about it is, the more we talk about his subjective motivations, we all know under Wren's and all the cases that follow, subjective motivations don't matter. I do understand that qualified immunity, it's based on objective behavior, but I only went where you led me. Yes, Your Honor, you're correct. I just wanted to plug that factual inaccuracy. Judge Wren, you had asked about the prescription, and that seems to be the linchpin of their case, the argument that they never carried the prescription in and showed it to Dr. Lawson. Interestingly, it's in the plaintiff's brief at page 12 to 13, page 13. It appears that the original of the prescription, according to the plaintiff's evidence, stayed in the Rite-Aid the whole time. So they never physically had, if the plaintiff's evidence is to be believed, that was what they originally faulted them for, not taking physically that copy of the prescription down to... Detective Cherry looked at it and gave it back to the pharmacist. That's the best we can tell because... They didn't make even a photostatic copy of it? I believe they made a photostatic copy, and I apologize. I can't tell you where in the record it is, but I can tell you that... I don't see how that helps you either, because the question could equally be asked, why didn't they show the photostatic copy? Well, they knew that he had written the prescription. The question was, had it been altered? So really the only thing that they didn't... There was no dispute that it came from Lawson. The question, what was in dispute was, is it for 20 or is it for 30? So they went to him and asked, hey, look at your records, tell us, was this prescription for 20 or 30? At the time, as you pointed out earlier, Lawson told him, looked in his records and his chart, I wrote it for 20, always write it for 20. And it wasn't until late in the game, after she had already entered the guilty plea, that the original prescription came back and there became an issue about whether it was actually altered or not. So it's a strange factual situation. It would seem to me that your better argument is the chain that stands between Norris and the warrant. Norris would have had to influence Cherry, then they would have had to influence the DA, and then the DA would have had to overcome the will of the magistrate judge to get to a warrant. Your Honor, you're correct. So there are layers of supposedly objective review. Yes, Judge Duncan, you're correct. That really is, for us, that's the defense issue here. Because all of the testimony is that Cherry did all these things independently. That's what Cherry testified. No, Cherry is the one who went to the magistrate. And one of the odd things about it is the plaintiff, again, it's a failure of proof issue on their part, because they haven't offered any evidence, any competent evidence, to contradict that Cherry was, in fact, the one who did all those things. All we have to show at summary judgment is a failure of proof. Does this all arise from this prescription that was altered to show 30 and 20? Or is there some other evidence of possession that comes from some other prescription? Well, Your Honor, Judge Winn, that's a good question. What got the ball rolling in this case was that- I want to know about this one, what she's entered this plea to. Right. Does that all arise from an allegedly altered prescription by which she obtained drugs illegally? Yes. The conviction that she got- Somebody has dropped the ball in this case for this lady, either from the defense perspective or from the prosecutor's perspective. There's no way in the world someone shouldn't have asked before that plea was entered, Dr. Lawson, didn't you write this prescription? And as I understand it, his answer is, I could have. Is that right? His answer at the time was, yes, I did. His answer later was, I could have. Either one. Either one. Pretty good stuff. Who in the world would enter a plea if a doctor says, oh, yes, I could have, or yes, I did, and you tell me this whole prosecution arises from that prescription being altered? That makes no sense here. Something has happened in this case that, to me, is not making any sense. I understand it's on probable cause from your perspective, which is a different burden, and you're right, from a prosecutor's perspective, that's not something you have to deal with, and I don't know where it lies, but something has happened in this case that's untoward, and that's why it's really not a difficult case, it's a messy case. It is messy. There were a lot more moving parts than that. I apologize, I'm past my time, but if you'd like, I'll finish answering this question. Yes. What had gotten the ball rolling originally in this was when another pharmacy called because the claimant had a meltdown in the pharmacy about not getting her narcotics medication, and when they checked through her records, they found that she took a lot of opioid narcotics, and this is what she ended up being charged with because that was the thing that they had proof on. But, yes, there were a whole lot of other factors that went into probable cause other than just . . . I fully understand that a lot of facts show that she could be guilty of something. I'm talking about what she actually pled to and what the evidence was in this case, and at least from my perspective, I'm not saying it informs probable cause because I agree, there's a lot more here going on for probable cause, but the case itself, I don't see how in the world someone doesn't ask if a prescription is supposed to alter the doctor. Did you alter it? And then he says, well, I could have. Well, I did. That's a problem. In hindsight, the evidence looks thin, but it didn't at the time is, I guess, the point that we're trying to make. It looked like if he came to court and testified, I write it for 20, and there's a prescription for 30. I don't know if it's just thin. The doctor says I wrote it. It's not thin. That's legal. She's got those things legal. But, see, that is . . . I'll certainly agree with that, Your Honor. Thank you. Mr. James? I think three minutes is what I have. Yes. Approximately. So let me address the standing question, the standing issue. I'd direct Judge Duncan to Humbert, the Humbert case. Humbert raised the standing question. In Humbert, there was the officer who . . . You can just summarize. Don't take a lot of your time. You can just summarize for me why you don't think it's a problem here. I don't think it's a problem here because in Humbert, which was before this court, the court said the two officers who simply gave information that gave rise to were . . . also could be held liable and qualified immunity was not enforced. Thank you. To answer, A.G., your question earlier that I did not do a very good job of answering in terms of the record. So in the order at the record on page 953, that's Judge Boyle's order, the Cherry had been made aware of questionable circumstances involving plaintiffs related to filling prescriptions for narcotic pain medication. And that's a reference that counsel just made. And it says here in our record and in Cherry's testimony, he did not know the source of Norris' information and did not ask why Norris, before ever contacting Cherry, concluded that Daniel Spivey had forged this prescription. Well, of course, one reason for that, I'm sorry, in the record site is Joint Appendix 548, Lines 19-24, 554, Lines 15-25. But does that help you with respect to showing that Cherry's independent knowledge or investigation was what led him to go to the district attorney and then fill out the affidavit? There's no affidavit and Norris accompanied Cherry to, quote, explain everything. And that's in Norris' testimony. Well, he had to make out an affidavit for the magistrate. No, sir, not in North Carolina. Orally. No, that's right. So he did it all orally. All of it orally. And there's one fact that we pled in our complaint. And it's one that I overlooked, perhaps, in our briefing. Detective Norris' wife is a magistrate in Columbus County. Now, she wasn't the magistrate that Norris... But that's not in the record. It is in the record. It's in my complaint and it's not refuted. And the court can take judicial notice of it. You go to the NCAOC website and see her name. She's now the chief magistrate. Detective Norris had instant credibility with the magistrate. And SBI agent Cherry. In North Carolina, SBI agents... Did you make that allegation in your complaint that there was prejudice created by Detective Norris' wife? As your Honor knows, at this stage, and even in the recent Supreme Court case, it's the totality of the circumstances. Right. But did you make that allegation? Yes, sir. You did make it. I did make the allegation. Did not make the allegation. I made the allegation factually. And it was admitted. Because it's truthful. All right. So the allegation that you made was that Detective Norris' wife is a magistrate. Did you make an allegation that that relationship affected this case? I made the alleg... Not specifically, to answer your question. But I made the allegation that... And the complaint's a lengthy complaint. It looks like code bleeding. It's a lengthy complaint factually because of the totality of the circumstances. There is something amiss here. And we were pretty confident, based upon our factual investigation pre-suit, that Cherry trusted Norris to his detriment. And he trusted Norris. And it was Norris driving the bus. It was Norris manipulating. It was Norris pursuing. It was Norris who stopped the husband. And that case was thrown out. So it was Detective Norris who we sued and should be held accountable and responsible. It was Detective Norris who knew what that prescription said and chose not to show it to Lawson. Thank you, Judge Dunn. The problem with this case must have changed because you got in too late. Could be. Could be. Thank you. Thank you very much. We will come down to the council and proceed directly to the next case.
judges: Allyson K. Duncan, G. Steven Agee, James A Wynn, Jr.